UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LINDA MAXWELL,

       Plaintiff,

v.                                              Civil Action No. 2:09-0500

WELLS FARGO BANK, N.A.,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

       Pending is the plaintiff's motion to remand for lack of subject matter jurisdiction, filed June 8, 2009.


I. Factual Background


       This action, filed on March 27, 2009, in the Circuit Court of Kanawha County, arises from the defendant's conduct relating to the plaintiff's mortgage.  The plaintiff seeks recovery against the defendant for multiple alleged violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), West Virginia Code § 46A-2-101, <u>et seq.</u>  Defendant removed on the basis of federal question, diversity and supplemental jurisdiction on May 6, 2009.  As noted, plaintiff moved for remand on June 8, 2009.  Specifically, plaintiff concedes that diversity of citizenship exists between the parties, but contends

that the amount in controversy does not exceed $75,000 as required under 28 U.S.C. § 1332.  The total amount sought by plaintiff is not specified in the complaint.

According to the complaint, plaintiff purchased her house located at 232 Oakwood Drive, Charleston, West Virginia, for $57,000 in 1996.  (Compl. ¶ 7).  BankOne originally financed the purchase, and later sold plaintiff's loan to Washington Mutual Bank.  (Id. at 8).  Washington Mutual Bank sold plaintiff's loan to defendant in 2005.  (Id.).

Plaintiff's monthly payments were initially $615.00, but recently increased to $671.56 a month.  (Id. at 10). Plaintiff states that she never received notice of the increase in payments.  (Id. at 11).  Following the increase, plaintiff made three payments to defendant in June, July, and August, 2008. (Id. at 12).  Defendant returned these payments to plaintiff, including the August payment which plaintiff made for the increased amount of $671.56.  (Id.).

When plaintiff contacted defendant about the return of her payments, defendant advised her that no further payments would be accepted from her unless her account was brought current immediately and in full.  (Id. at 14).  Plaintiff sought a

2

"workout" or resolution of her mortgage arrears, but defendant declined. (Id. at 15). Defendant requested the trustee under plaintiff's deed of trust to initiate foreclosure proceedings and the trustee noticed a foreclosure sale of plaintiff's property for October 8, 2008. (Id. at 16).

In Count I of the complaint, titled " Failure to Accept Payments," the plaintiff asserts that defendant unlawfully refused to accept and apply plaintiff's June, July, and August, 2008, payments to plaintiff's loan in violation of W. Va. Code § 46A-2-115.

In Count II, titled "Illegal Debt Collection," plaintiff alleges that defendant made false representations regarding the character, extent, or amount of a claim against plaintiff through written correspondence and foreclosure proceedings in violation of W. Va. Code § 46A-2-127(d). Plaintiff further alleges that defendant charged her account interest on payments wrongfully refused by defendant in violation of W. Va. Code § 46A-2-127(d).

In Count III, titled "False and Unconscionable Debt Collection," plaintiff contends that defendant made false representations regarding the character, extent, or amount of a

3

claim against plaintiff through written correspondence and
foreclosure proceedings in violation of W. Va. Code § 46A-2-
127(d).  Plaintiff further contends that defendant charged her
interest on payments wrongfully refused by defendant in violation
of W. Va. Code § 46A-2-127(d).

Plaintiff seeks actual damages, civil penalties of
$4,400[1] for each violation pursuant to W. Va. Code § 46A-2-101,
reasonable attorney fees and costs of litigation pursuant to W.
Va. Code § 46A-2-115, and "reasonable damages for emotional
distress, annoyance and aggravation, and humiliation." (Id. at
21(a)-(c)).

## II. Standard of Review

The court is vested with original jurisdiction of all
actions between citizens of different states when the amount in
controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  The
statute establishing diversity jurisdiction is to be strictly
construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-
09 (1941); Healy v. Ratta, 292 U.S. 263, 270 (1934); Schlumberger
Indus., Inc. v. Nat'l Surety Corp., 36 F.3d 1274, 1284 (4th Cir.

---

[1] See infra fn. 3.

4

1994).  The party seeking removal bears the burden of establishing federal jurisdiction and, if challenged, also bears the burden of proving that federal jurisdiction was properly invoked. <u>Mulcahey v. Columbia Organic Chem. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994).

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite diversity of citizenship exists unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938).  However, the "legal certainty" test applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court. <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F.Supp. 932, 935 (S.D. W.Va. 1996).

A different test applies "in removal situations . . . in which the plaintiff has made an unspecified demand for damages in state court." <u>Id.</u>  A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount of $75,000.

Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996); De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993) and De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995); Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993); Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992); Sayre v. Potts, 32 F.Supp.2d 881, 885 (S.D. W.Va. 1999); Landmark Corp., 945 F.Supp. at 935.  A court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied.  Weddington v. Ford Motor Credit Co., 59 F.Supp.2d 578, 584 (S.D.W.Va.1999); Mullins v. Harry's Mobile Home, Inc., 861 F.Supp. 22, 23 (S.D.W.Va.1994).


## III. Discussion


According to the notice of removal, the plaintiff is a resident of West Virginia.  (Notice of Removal ¶ 14).  Defendant Wells Fargo is a federally chartered national banking association with its principal office in Sioux Falls, South Dakota.  (Id. ¶ 2).  As noted, the parties do not dispute that they are diverse. Rather, the plaintiff seeks remand on the ground that the amount in controversy requirement is not satisfied.

A. WVCCPA Violations

The total number of WVCCPA violations alleged in this case is critical in determining the amount in controversy inasmuch as the civil penalties make up a major portion of the award available to plaintiff.  In her motion to remand, plaintiff enumerates ten WVCCPA claims as follows:  three violations for failure to accept her mortgage payments, two violations for attempting to collect the entire loan by foreclosure based on incorrect amounts owed, and five "additional violations."[2]  The parties do not dispute that plaintiff may recover a statutory penalty of up to $4,400 for each of the ten alleged WVCCPA violations, for a total of $44,000.[3]  See W. Va. Code § 46A-5-101.  Defendant does, however, challenge the number of WVCCPA violations plaintiff claims to have asserted.  Defendant contends that the complaint alleges at least thirteen violations.  In order to resolve this issue, the court examines the allegations as framed in the complaint.  Sayre v. Potts, 32 F.Supp. 2d 881,

_____

[2] Plaintiff does not reveal the bases for these five "additional violations" at any point in her motion to remand.

[3] While plaintiff's complaint states that the violations under the WVCCP each have a maximum penalty of $4,000, plaintiff's subsequent motion calculates the amount in controversy using a maximum penalty of $4,400, to reach a total of $44,000 for the ten violations alleged.

7

887 (S.D.W.Va. 1999)("The starting point for ascertaining the
amount in controversy . . . is obviously the complaint itself.")
The number of civil penalties at issue are found in Counts I, II
and III as follows.

Count I of plaintiff's complaint seeks civil penalties
for defendant's "failure to accept receipt of payments and apply
same to Plaintiff's loan."  Plaintiff alleges that defendant
wrongfully refused three separate payments made by plaintiff.
Accordingly, Count I alleges three potential violations of the
WVCCPA, totaling $13,200.[4]

In paragraph 25 of Count II, plaintiff alleges that
defendant "made false representations regarding the character,
extent, or amount of a claim against Plaintiff[] in violation of
W. Va. Code § 46A-2-127(d), through written correspondence and
foreclosure proceedings."  Through this somewhat vague language,
the court can reasonably infer a minimum of two potential WVCCPA
violations -- one through defendant's written correspondence and
one through defendant's foreclosure proceedings.  In addition,
paragraph 26 of Count II asserts that defendant charged
plaintiff's account interest on payments wrongfully refused by

_____

[4] This corresponds with the three violations for failure to
accept payments asserted in plaintiff's motion to remand.

8

defendant in violation of W. Va. Code § 46A-2-127(d).  Inasmuch
as defendant allegedly refused payment on three separate
occasions, paragraph 26 contains an additional three alleged
violations of the WVCCPA.  In all, Count II alleges a minimum of
five violations, totaling $22,000.

In paragraph 28 of Count III, plaintiff alleges that
defendant "made false representations regarding the character,
extent, or amount of a claim against Plaintiff in violation of W.
Va. Code § 46A-2-127(d)."  However, in contrast to Count II,
plaintiff does not specify actions by the defendant leading to
the alleged violations.  Defendant suggests that the actions
referenced are presumably the same ones referenced in paragraph
25 of Count II, i.e. the written correspondence and foreclosure
proceedings.  The court is unwilling to make this presumption
absent express language.  Without further elaboration by
plaintiff, paragraph 28 alleges at least one violation of the
WVCCPA.  Paragraph 29 of Count III alleges defendant charged
interest on the wrongfully refused payments in violation of
W. Va. Code § 46A-2-128(d).  As in Count II, this encompasses
three alleged violations based on the three refused payments.  In
all, Count III alleges a minimum of four violations, totaling
$17,600.

9

Accordingly, based on plaintiff's claims in Counts I, II and III, the complaint suggests a minimum of twelve individual WVCCPA violations.  At $4,400 per violation, the civil penalty amount at issue solely for the WVCCPA claims totals $52,800.

B.  Actual Damages for Excess Fees

Plaintiff seeks recovery of $9,000 in excess fees she contends were wrongfully charged to her account by the defendant. Both parties agree that the alleged $9,000 of actual damages should be included when calculating the amount in controversy.

C.  Damages for Emotional Distress, Annoyance, and Humiliation

Additionally, the court notes that plaintiff requested "reasonable damages for emotional distress, annoyance and aggravation, and humiliation" for all three counts listed in the complaint.  While these damages were omitted from discussion in plaintiff's motion to remand, they remain in the complaint and thus they remain within the court's calculation of the amount in controversy.

In order to determine a reasonable measure for these damages, the court considers a settlement demand offered by the plaintiff as evidence of the total amount in controversy.  For purposes of determining subject matter jurisdiction, courts may consider evidence of any settlement demands made by the plaintiff.  <u>Sayre</u>, 332 F.Supp. 2d at 886.  By letter to the defendant dated October 31, 2008, plaintiff demanded $10,000 "for annoyance and inconvenience, aggravation and humiliation, and payment of her attorney fees."  (Pl.'s Mot. Remand, Ex. A).  At the time of the settlement demand, plaintiff states that her attorneys' fees were less than $2,000.  (Pl.'s Mot. Remand at 2). By implication, she demanded at least $8,000 to compensate her for emotional distress, annoyance, and humiliation.[5]  In accordance with the settlement demand and the repeated requests for relief within the complaint, the court includes $8,000 for compensatory damages for alleged emotional distress, annoyance, and humiliation within the amount in controversy.[6]

_____

[5] Defendant suggests using the entire $10,000 requested to calculate the amount of damages for emotional distress, annoyance, and humiliation, but using the full amount fails to acknowledge the contribution of attorneys' fees.

[6] As defendant aptly points out, "[p]arties routinely offer and accept settlement amounts significantly below the total amount placed into controversy by the case in order to avoid the risks that accompany a trial."  <u>Sayre</u>, 32 F.Supp. 2d at 888.  As the court ultimately finds the amount in controversy requirement

D. Attorneys' Fees


        Finally, attorneys' fees are included in the
calculation of the jurisdictional amount for the claims in this
case only if they are specifically provided for in the state
statute at issue.  See Mo. State Life Ins. Co. v. Jones, 290 U.S.
199, 202 (1933).  In this case, attorney fees are available under
the West Virginia Consumer Credit and Protection Act, and so they
should be included in the calculation of the jurisdictional
amount in controversy.  W. Va. Code § 46A-5-104.


        As mentioned above, plaintiff informs the court that,
at the time of the settlement demand dated October 31, 2008, her
attorneys' fees were less than $2,000.  Eleven months have
elapsed since that time.  During this time, plaintiff's attorney
has prepared and filed a complaint in state court, prepared and
submitted a motion to remand, and begun the expensive process of
discovery by filing Rule 26(a)(1) disclosures and plaintiff's
first set of interrogatories.  Based on the extensive work
required for these filings, the court finds that plaintiff's

---

to be met in spite of using the conservative $8,000 figure
provided by plaintiff, it would be of no consequence to analyze
the full recovery possible for plaintiff's claims of emotional
distress, annoyance, and humiliation.

12

attorneys' fees could easily have doubled the $2,000 of prefiling fees.  Furthermore, the possible $4,000 of fees accrued up to this point does not account for the potential future costs of conducting extensive discovery, preparing substantive motions and responses, and litigating the case at trial.  In the court's view, a distinctly conservative estimate of a plaintiff's attorneys' fees for a case of this nature, including a trial on the merits, would not fall below $10,000.[7]  Accordingly, at least $10,000 for attorneys' fees should be considered in determining the amount in controversy.


E. Summary of Damages


        Based upon the foregoing discussion, defendant has demonstrated by a preponderance of the evidence that the jurisdictional minimum is satisfied inasmuch as a jury could, if plaintiff fully prevails, properly award (1) $52,800 in WVCCPA civil penalties; (2) $9,000 in actual damages for excess fees

---

        [7] It is noted that in two rather recent cases involving WVCCPA violations, the court held that plaintiffs' attorneys fees could reasonably reach up to $25,000.  See Patton v. Fifth Third Bank, No. Civ. A. 2:05-0790, 2006 WL 771924, at *3 (S.D. W.Va. Mar. 24, 2006).  McGraw v. Discover Fin. Servs., Inc., No. Civ.A. 2:05-0215, 2005 WL 1785259, at *6 (S.D. W.Va. July 26, 2005).

charged; (3) $8,000 in compensatory damages for emotional distress, annoyance, and humiliation; and (4) $10,000 in attorneys' fees, aggregating $79,800.[8]


IV.


For the reasons set forth, it is accordingly ORDERED that plaintiff's motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  October 9, 2009

John T. Copenhaver, Jr.
United States District Judge

---

[8] Defendant also contends that federal subject matter jurisdiction exists because plaintiff's claims regarding interest on the refused mortgage payments fall within the complete preemptive scope of the National Bank Act.  The court declines to address this contention as it finds subject matter jurisdiction exists on the basis of diversity.

14